John N. DUNHAM, Administrator of the Estate of Dorothy Louise Sipling, Deceased, Plaintiff,

v.

Frederick W. WRIGHT and Frederick M. Wright, Defendants.

Civ. No. 8820.

United States District Court
M. D. Pennsylvania.

June 6, 1969.

Markowitz, Kagen & Griffith, York, Pa., for plaintiff.

Dowling & Dowling, Harrisburg, Pa., for defendants.

NEALON, District Judge.

## MEMORANDUM

In this malpractice action, the jury returned a verdict in favor of defendant physicians, Dr. Frederick W. Wright and Dr. Frederick M. Wright, thereby absolving them of responsibility for the unfortunate death of Mrs. Dorothy Louise Sipling following a thyroidectomy. Plaintiff had contended that defendants failed to properly prepare decedent for the thyroidectomy, precipitating a postoperative thyroid crisis causing her death, and also failed to obtain an informed and knowledgeable consent from decedent or her husband before performing the thyroidectomy. Following the verdict, plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Plaintiff's argument on the motion is confined to the issue of informed consent and specifically asserts that the record is devoid of any testimony on which a jury could have found that an informed consent was given or that an emergency existed which would excuse the requirement of an informed

consent. According to plaintiff, the Court should have ruled, as a matter of law, that an informed consent was not given and should not have charged the jury that an informed consent was not necessary if they concluded that an emergency existed.

■ Under Pennsylvania law, before a physician or surgeon may perform an operation on a patient he must obtain the consent either of the patient, if competent to give it, or someone legally authorized to give it for him, unless an emergency exists and an immediate operation is necessary to save the patient's life or health. The consent, moreover, is of no legal effect unless it is an informed and knowledgeable consent. Gray v. Grunnagle, 423 Pa. 144, 223 A. 2d 663 (1966). "Where a patient is in possession of his faculties and in such physical health as to be able to consult about his condition, and where no emergency exists making it impracticable to confer with him, his consent is a prerequisite to a surgical operation by his physician." Moscicki v. Shor, 107 Pa.Super. 192, 163 A. 341 (1932).

I   Was there sufficient evidence of an informed and knowledgeable consent warranting submitting this issue to the jury or was plaintiff entitled to a ruling, as a matter of law, that such consent was not given?

The evidence in this case reveals that Dr. Frederick W. Wright first saw the decedent on December 12, 1963, at the request of her family physician, Dr. George E. Thomassy. He described her as " * * * one of the most extremely seriously ill women due to her goiter that I have ever seen * * *" and had her admitted immediately to Hanover Hospital. He told decedent and her husband that the only possible way she could recover was to have surgery performed and that all thyroid surgery is considered serious. After her admission to the hospital, both the decedent and her husband signed general authorization forms for medical and surgical treatment. According to Dr. F. W. Wright, an immediate operation could not be performed because decedent was almost in heart failure and her thyroid condition had reached a point of extreme toxicity. Consequently, it was necessary to give her drugs in order to get her thyroid gland in a euthyroid state before operation. She did improve some in the Hospital and at her request, she was permitted to go home for Christmas in order to be with her small children. She returned to the Hospital on January 14, 1964, after the Doctor determined that she was not taking the medication at home that had been prescribed for her. Dr. F. W. Wright testified that he frequently informed Mr. Sipling that the operation would be performed as soon as Mrs. Sipling was in proper condition for it and, while he did not tell the exact day, he did tell him two days before the operation that it would be one of the following two days. According to Dr. F. W. Wright, the optimum time for surgery in thyroid cases occurs when the patient is not emotionally disturbed and the pulse rate is under 100. If a patient becomes nervous or excited at the thought of an immediate operation or upon seeing a close relative,[1] the pulse rate will rise and the operation will have to be cancelled. Because of this, he kept a close watch of Mrs. Sipling's condition and while her pulse rate was satisfactory, on February 6, he concluded that the drugs were losing their effectiveness and that if he did not operate immediately, then he might never get the chance again because of strain on her heart. The operation was performed on the morning of February 6, without any further notice to Mr. Sipling, and she died February 7, at 1:30 A.M. Four other physicians testified on behalf of defendants and all stated that the surgery was performed at the optimum time.

---

1. Dr. F. W. Wright also testified that he had " * * * noticed on previous visits by Mr. Sipling that she would get emotionally upset."

No hard and fast rule can be applied as to what would constitute an informed and knowledgeable consent in all cases and normally the question is one of fact for a jury to decide. In the case before us there is evidence of disclosure to the patient and her husband of the necessity for an operation and the risks involved therein. At all times both Mr. and Mrs. Sipling knew that an operation was to take place, although the exact time had not been fixed. The reason for this, according to defense testimony, was that the patient had to be treated with drugs to stabilize her basal metabolism, lower her pulse rate, and reduce the potential strain on her heart. The patient was not given notice of the exact time of her operation because any emotional strain would cause her pulse to rise, thereby destroying the very tranquil state that the surgeons were attempting to obtain through medication. As to any failure to give notice to Mr. Sipling concerning the exact time of surgery, Dr. F. W. Wright testified that Mrs. Sipling had previously reacted emotionally to Mr. Sipling's visits, and further, "When I go in in the morning, I do not have time to phone around and try to locate a relative * * * (t)his is something that we do routinely * * * (t)hey are told they're going to be operated on when they are ready, and I only know when they're ready when I see them * * * (y)ou have to do a toxic case like this when you can."

The danger present in notifying a thyroid patient of the exact time when surgery is scheduled was discussed in Roberts v. Wood, 206 F.Supp. 579 (S.D. Ala.1962), where the Court stated:

"Doctors frequently tailor the extent of their pre-operative warnings to the particular patient, and with this I can find no fault. Not only is much of the risk of a technical nature beyond the patient's understanding, but the anxiety, apprehension, and fear generated by a full disclosure thereof may have a very detrimental effect on some patients."

In Ball v. Mallinkrodt Chemical Works, 53 Tenn.App. 218, 381 S.W.2d 563, 19 A.L.R.3d 813 (1964), a similar problem was confronted and analyzed as follows:

"The physician may not minimize the normal operation in order to induce the patient's consent, at the same time the physician must place the welfare of his patient above all else, and the very fact places him in a position in which he must sometimes choose between two alternative courses of action, one is to explain to the patient every risk attendant upon any surgical procedure or operation, no matter how remote. This may well result in alarming a patient who is already unduly apprehensive and who may, as a result, refuse to undertake the surgery in which there is, in fact, minimal risk. *It may also actually increase the risk by reason of the psychological result of the apprehension of it.* The other is to recognize that each patient presents a separate problem, that the patient's mental and emotional condition is important and in certain cases may be crucial, and that in discussing the elements of risk a certain amount of discretion must be employed consistent with the full disclosure necessary for an informed consent." (Emphasis supplied.)

The evidence in this case not only justified submitting the issue of consent to the jury, but, indeed, demanded it. To hold that on the record here, the Court should declare an absence of consent as a matter of law would establish a dangerous and unwarranted precedent. No rigid and precise formula can be devised in this delicate area as to the frequency and extent of notice and discussion concerning contemplated surgery, but all of the circumstances must be considered in determining whether or not an informed and knowledgeable consent was given in any particular case. Unless the absence of consent is obvious, the issue is for a jury to determine.

II   Did the Court err in instructing the jury that consent was not required if they found that an emergency existed?

Plaintiff does not challenge the legal principle that an informed and knowledgeable consent is not required if an emergency exists and an immediate operation is necessary, but maintains that the record in this case is devoid of any evidence on which the jury could have found that an emergency existed.

Assuming arguendo, that the required consent was not obtained before surgery was performed, what evidence was there of an emergency situation requiring an immediate operation to have Mrs. Sipling's life or health? Dr. F. M. Wright testified that on the morning of February 6, Mrs. Sipling was undergoing a change in response to her medication and that it was now the proper time to perform the surgery. Dr. W. Emory Burnett, Professor of Surgery and emeritus Chairman at Temple University Medical School, after reviewing the Hospital charts, stated that Mrs. Sipling had reached the point where the drugs no longer controlled her and she would slip further back into the severity of her disease and " * * * one should proceed now, to interrupt this process by removal of an adequate amount of the thyroid gland."

As noted previously in this Memorandum, Dr. F. W. Wright testified that on February 6, he concluded that the drugs were losing their effectiveness and that if he did not operate immediately, he *might never get the chance again* because of strain on her heart. Further, he stated that in a toxic case such as Mrs. Sipling's the decision to operate can only be made after actually seeing the patient and *observing her condition*. This, he declared, is why it was necessary to operate immediately on the morning of February 6.[2]

 To remove the emergency issue from the jury would be tantamount to saying that on the morning of February 6, when faced with an apparent crisis, Dr. F. W. Wright should have discussed the imminent surgery further with Mrs. Sipling, in spite of the possible emotional consequences hereinbefore referred to, or should have delayed the operation until he was able to reach Mr. Sipling and obtain his *specific* consent for surgery at that *particular* time. This I refuse to do. Once again, it was for the jury to evaluate the testimony and to decide collectively whether or not there was an immediate emergency on the morning of February 6, requiring the performance of surgery without any delay or postponement.

Plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial will be denied.

2. "Q There was no immediate emergency that required an operation on February 6th, 1964, was there, Doctor?

"A Yes, I just explained that, Mr. Markowitz. Her drugs had seemed to have lost their effectiveness, and if she is not operated on at that point, you delay this more and more and more, and you're very apt to have a patient that you never will be able to operate on." (N.T. 244)